W. FRANK FOWLE & another *vs*. PITT AND SCOTT, LIMITED.

Suffolk.    January 15, 1903. — May 22, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Equity Jurisdiction*, Mistake. *Bill of Lading*.    *Contract*, Equitable defence.

A manufacturer sent certain goods to a forwarding company addressed to a consignee at Havre, France, the course of business between the parties being that goods so sent and addressed should be forwarded by the first steamer sailing from New York for the foreign port named.    The name of a certain steamer was inserted in the bill of lading by an agent of the forwarding company under the misapprehension that the steamer named was the first to sail for Havre after the arrival of the goods in New York, and the bill of lading so made out was accepted by the shipper.    In fact the steamer named was not sailing for France at all, but for another country.    The goods were shipped by the first steamer sailing from New York for Havre, and this vessel did not appear to have been unseaworthy at the time of her departure.    The vessel was never heard from, and the goods never arrived.    In an action by the shipper on the bill of lading for failure to ship the goods by the vessel named, it was *held*, that the defendant might set up as an equitable defence, that the name of the steamer was inserted and accepted in the bill of lading by a mutual mistake of the parties, and that the vessel intended was the first vessel to leave New York for Havre, by which the goods were shipped.

CONTRACT or TORT, on a bill of lading, for failure to forward to the consignee at Havre, France, three cases of belt knives of the value of $980 to be transported by the steamship John Sanderson, with a second count alleging that the defendant negligently and in violation of its agreement placed the goods on the steamship Pauillac for transportation, which vessel was unseaworthy and by reason of such unseaworthiness was lost with the goods on board, and with a third count for an alleged conversion of the goods.    Writ dated October 31, 1900.

The defendant in an amended answer set forth the facts relied upon to show a mutual mistake which appear in the report.

In the Superior Court the case was heard before *Fox*, J., without a jury.    He found for the plaintiffs for the full value of the goods, and at the request of the parties reported the case for determination by this court.    If the finding was warranted, judgment was to be entered for the plaintiffs upon the finding.    If not, the finding was to be set aside and a new trial ordered.

The report was in substance as follows :

The plaintiffs were manufacturers of machine knives, having their place of business in Woburn. The defendant was a corporation engaged in the business of forwarding express matter to foreign countries, and having one of its places of business in Boston.

The defendant was permitted to show, against the plaintiffs' objection, that before January 13, 1900, the plaintiffs had sent to the defendant, at its office in Boston, packages of their goods to be forwarded by the defendant to addresses in foreign countries, without directions as to the particular steamship or line by which the goods were to be transported, other than that the goods were to be forwarded by the first steamer from New York sailing for the port to which the goods were consigned, and in accordance therewith the defendant had always forwarded such packages by the first steamer sailing for such port of consignment.

The judge found the following facts : On or about January 13, 1900, the plaintiffs sent by a local express to the defendant's office in Boston three cases of belt knives, addressed " L. C. Beaudry, Havre, France," with no other or special instructions as to the manner of forwarding the goods to Beaudry at Havre. The defendant thereupon shipped the goods to New York on a steamship belonging to a local line, and there caused the goods to be put on board the steamship first sailing for Havre from the port of New York after the delivery of the goods to the defendant. This vessel was the Pauillac.

About January 20, 1900, the plaintiffs received from the defendant's office in Boston a bill of lading of the goods, reciting that the goods were received by the defendant " to be transported on the good steamship John Sanderson, now lying in the port of New York and bound for Havre."

As a matter of fact, the John Sanderson was not bound for Havre, did not sail to Havre, and had not been advertised to sail for that port, but was at that time lying in the port of New York bound for South America, and sailed for South America on January 27, 1900. The name John Sanderson was inserted in the bill of lading by the defendant's agent in Boston, under the mistake and misapprehension that the John Sanderson was the

next steamship to sail for Havre from New York after the arrival of the plaintiffs' goods in New York. The officers and agents of the defendant in New York did not know that the name John Sanderson was inserted in the bill of lading, and forwarded the goods by the first steamer in accordance with their previous practice in regard to the plaintiffs' shipments. It was agreed that the bill of lading was to be treated in all respects as if made by the defendant. The mistake was not discovered until after the Pauillac had sailed and the plaintiffs had been advised by their consignees in Havre of the non-arrival of the goods and the loss of the Pauillac. The Pauillac, carrying the plaintiffs' goods, sailed from New York for Havre on February 3, 1900, and was never after heard from. There was no evidence as to the cause of the loss of the Pauillac. A witness testified in behalf of the defendant, against the plaintiffs' objection, that the Pauillac was rated A 1 and had the same rating as the John Sanderson.

*G. W. Norris & G. L. Mayberry*, for the plaintiffs.

*A. Lord & J. B. Sullivan, Jr.*, for the defendant.

HAMMOND, J.   It appeared " that prior to the thirteenth day of January, 1900, the plaintiffs had sent to the defendant, at its office in Boston, packages of their goods to be forwarded by the defendant to the addresses thereof in foreign countries, without directions as to the particular steamship or line by which said goods were to be transported, other than that the goods were to be forwarded by the first steamer from New York sailing for the port to which said goods were consigned, and in accordance therewith the defendant had always forwarded such packages by the first steamer sailing for such port of consignment." The judge also found as a fact that the goods in question, addressed " L. C. Beaudry, Havre, France," were sent by a local express to the office of the defendant in Boston, with no other or special instructions as to the manner of forwarding them to said Beaudry at Havre.

Under these circumstances, it is plain that, in accordance with the usual course of dealing between the parties, it was the intention of the plaintiffs that their goods should be shipped by the first steamer which should leave New York for Havre after the arrival of the goods in New York. It is further found as a fact

that the name " John Sanderson " was inserted in the bill of lading, under the misapprehension that that steamship was the first to sail for Havre after the arrival of the plaintiffs' goods in New York. It was the intention of the defendant to ship by the first steamship for Havre. That was the clear understanding of both parties, and in that respect they agreed. Intending to put that agreement in writing, the defendant made out and delivered the bill of lading to the plaintiffs. At that time the John Sanderson was not advertised to sail for Havre, but was lying in New York bound for South America, for which she soon after sailed. The insertion of the name " John Sanderson " was a mistake on the part of the defendant, and the acceptance of the bill by the plaintiffs as the statement of the name of the steamship was a mistake. The mistake was in inserting the name of " John Sanderson " as the steamer agreed upon. She was not the steamer intended, namely, the first steamer to leave New York for Havre, but the bill of lading was made out by the defendant and received by the plaintiffs under the mistake that she was; and this was a mutual mistake as to the same thing, namely, the name of the next steamship to leave New York for Havre. The facts therefore show that by reason of a mutual mistake the bill of lading did not properly set out the actual contract with respect to the steamer upon which the goods were to be shipped, and a bill in equity would lie to correct it in this respect.

Under R. L. c. 173, § 28, a " defendant may allege in defence any facts which would entitle him in equity to be absolutely and unconditionally relieved against the plaintiff's claim or cause of action." The answer is broad enough to open this defence. It sets out that the goods were duly shipped in performance of the oral contract, that the goods would be shipped by the first steamer, that the name " John Sanderson " was inserted in the bill of lading by the defendant's agent in the mistaken belief that that was the first steamer, and that the bill of sale was received by the plaintiffs with the same belief. It is plain that the defendant intended to rely upon this defence of mutual mistake.

It is urged by the plaintiffs that in the finding for the plaintiffs is involved a finding by the court against the defendant upon

the question of mutual mistake as a matter of fact. We do not understand the report in that way. We think that so far as material to that question the fair interpretation of the report is that, taking all the facts stated in the report, the mistake was not such a mistake as would be corrected in equity. And we are confirmed in this view by the closing sentence in the memorandum which was filed by the judge in the case, a copy of which is among the papers transmitted to us. The sentence reads thus: " This does not seem to be a case of mutual mistake within the meaning of the cases cited by the defendant. As there seems to be no substantial controversy about the facts, the case, at the request of the defendant, may be continued for report."

Since the goods seemed to have been shipped in the first steamer in accordance with the oral contract, and since for reasons above stated the written contract, in so far as inconsistent with the oral contract as to the particular steamer, is to be reformed so as to conform to the oral agreement, and since we do not understand that the Pauillac was not found to have been unseaworthy at the time of her departure, we think that the finding for the plaintiffs was not warranted. In accordance with the terms of the report there is to be a

*New trial.*